BROWN, Administrator, Office of Price Administration, v. F. W. WOOLWORTH CO.

District Court, S. D. New York.

Nov. 13, 1943.

634

Mitchell Jelline, Chief Enforcement Atty., Office of Price Administration, of New York City (Fleming James, Jr., and Atwood Cranston, both of Washington, D. C., of counsel), for plaintiff.

Davies, Auerbach, Cornell & Hardy, of New York City (Martin A. Schenck, Kenneth W. Greenawalt and George H. Boynton, all of New York City, of counsel), for defendant.

COXE, District Judge.

This is a motion by the Price Administrator for a preliminary injunction to restrain F. W. Woolworth Company from violating the provisions of a Maximum Price Regulation issued pursuant to the Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq.

Maximum Price Regulation 330 was issued by the Price Administrator on February 18, 1943, and became effective on February 24, 1943. This regulation classified women's, girls' and children's outerwear garments, according to kind (such as coats, suits, dresses) and size groups, and gave each class or category a "category number" in an appendix thereto. In addition to making rules for the determination of the ceiling price for the garments to which the regulation applied, it fixed a "highest price line" limitation for each "category number". Section 1389.553 provided that a retailer could not, under any circumstances, sell any garment at a higher price than the "highest price line" at which the retailer delivered a garment of the same "category number" during March 1942. Thus, if during March 1942, the "highest price line" of girls' dresses, sizes from 7 to 14, inclusive (category number 24) sold by a retailer was $1.19, the "highest price line" of that "category number" which that retailer could sell would be $1.19.

Section 1389.562 of M.P.R. 330 contained definitions. Subdivision (b) defined "retail sale" or "sale at retail" as a sale to an ultimate consumer other than an industrial or commercial user, and "seller" was defined in subdivision (h) as a seller of any of those types of women's, girls' and children's outerwear garments covered by the regulation. This section further provided in subdivision(a) that unless the context otherwise required or unless otherwise specifically provided in M.P.R. 330, the definitions set forth in Section 302 of the Emergency Price Control Act of 1942, as amended, and in Section 1499.20 of the General Maximum Price Regulation, should apply to the terms used in M.P.R. 330. M.P.R. 330 contains no specific provisions with respect to chain store operators, but Section 1389.554(f) provided that for the purpose of the regulation each separate department of a selling establishment should be considered a separate seller.

Section 1499.20 of the G.M.P.R. is headed "Definitions and Explanations". Subdivision (e) provides that "'Establishment' refers to the physical location of the store, shop or other place of business in which commodities or services are sold", and subdivision (s) states, so far as material, that "Where a seller at retail makes sales or supplies services through more than one selling unit, * * * each such separate place of business of the seller shall be deemed to be a separate seller".

On August 7, 1943, the Price Administrator issued Amendment 1 to M.P.R. 330 to become effective as of February 24, 1943. This amendment, so far as material, modified the original regulation by fixing the period between August 1 and December 31, 1941, as the "base period" for retailers with respect to the garments involved in this motion (Section 1389.552 (c) (2)), and provided that during the spring selling season, to wit, the period between March 1 and July 31 of each year (Section 1389.551 (d) (1), a retailer could not sell any garment for more than the "highest selling price line" at which that retailer delivered a garment of the same "category number" during March 1942, or during the fall selling season, to wit, the period between August 1 and February 29 (Section 1389.-551 (d) (2), for more than the "highest selling price line" at which that retailer delivered a garment of the same "category number" either during the retailer's "base period" or during March 1942. The amendment made no substantial changes in the definitions contained in the original regulation, but did specifically make Section 1499.4(a) of the G.M.P.R. a part of M.P.R. 330, as amended. Section 1499.4a provid-

ed for the determination of maximum prices by sellers at retail operating more than one retail establishment, and permits a written application to the Office of Price Administration for authorization to determine and use uniform maximum prices in all establishments.

Woolworth operates 1,857 retail stores in different cities throughout the United States. The Price Administrator charges, and it is not denied by Woolworth, that between March 1, 1943, and July 1, 1943, the spring selling season, 18 of the Woolworth stores sold certain classes of women's, girls' and children's outerwear garments of different "category numbers" covered by M.P.R. 330, as originally issued and as amended, at higher prices than those permitted by the "highest price line" limitation.

The River Rouge, Michigan, store of Woolworth sold a line of toddlers' dresses, category 25, at 69¢, although the "highest price line" of toddlers' dresses which this particular store sold in March 1942 was 59¢. The other 17 stores sold "higher price lines" of "category numbers" than the "highest price line" of such "category numbers" such stores sold in March 1942.

There is no claim that Woolworth, since February 24, 1943, has sold any article for a higher price than it sold a similar article in March 1942, and there is no charge that Woolworth has violated "the highest price line" limitation of M.P.R. 330, as amended, during the present fall selling season. Indeed it is not disputed by the Price Administrator that the prices charged during the past spring season by the 18 stores for the "category numbers" in question are now permissible during the present fall selling season.

The Price Administrator insists, however, that each branch store is a separate seller under M.P.R. 330, as amended; Woolworth, on the other hand, argues that because of its method of doing business, and because of the absence of any specific provision in M.P.R. 330, as amended, dealing with chain stores, the company itself is the seller, and the branch stores are not separate sellers. Woolworth points out that some of its stores during the spring selling season did sell the price lines of the "category numbers" in question; and if the branch stores are not separate sellers there was no violation by Woolworth of M.P.R. 330, as amended.

■ The Price Administrator is right in his construction of M.P.R. 330 as amended. Section 1499.20(s) of the G.M.P.R. provides with respect to chain store operators that each separate place of business of the seller shall be deemed to be a separate seller, and this definition must be deemed part of M.P.R. 330, as amended. There is nothing in the context of M.P.R. 330, as amended, that requires the rejection of this definition. This conclusion is fortified by the special provisions in M.P.R. 330 as originally issued and as amended, providing that each separate department of a selling establishment should be considered a separate seller. It would be unreasonable to suppose that the Administrator intended that in the case of a chain store operator with many stores the company itself, or as a whole, would be regarded as the seller, and that in the case of a single establishment under one roof with different departments each department would be considered a separate seller. It is, therefore, unnecessary to determine whether Section 1499.4a has any bearing on the issues involved.

■ There is no authority to consider whether the continuance of the temporary restraining order will cause or prevent inflation, nor whether the Administrator exercised a wise discretion in issuing M.P.R. 330 as above construed. Under Section 204 (d) of the Emergency Price Control Act, exclusive jurisdiction to determine the validity of any regulation issued by the Price Administrator is vested in the Emergency Court of Appeals, and no constitutional question is here involved. Rottenberg v. United States, 1 Cir., 137 F.2d 850.

The Price Administrator is entitled to an injunction pendente lite, limited so as not to restrain the sale of "category numbers" at price lines that are now permissible.